

U.S. Department of Justice

United States Attorney
Eastern District of New York

RTP:DR/PP
F. # 2023R00675

271 Cadman Plaza East
Brooklyn, New York 11201

March 12, 2024

By ECF

The Honorable Orelia E. Merchant
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Alexander Figliolia, Jr. and Kenneth Sutherland
              Criminal Docket No. 23-CR-498 (OEM)

Dear Judge Merchant:

      The government respectfully submits this letter to notify the Court of potential conflicts involving Joseph Mure, Esq., who represents Kenneth Sutherland. The conflicts arise from Mr. Mure's previous representation of co-defendant Alexander Figliolia, Jr.

      The government advises the Court of this information pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982). See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995). In light of the foregoing, and as discussed in further detail below, there is a substantial risk that Mr. Mure will face irreconcilably conflicted duties of loyalty. Therefore, the Court should conduct a rigorous and searching inquiry in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982), to determine whether both Figliolia and Sutherland fully, knowingly, and intelligently waive the potential conflicts posed by Mr. Mure's proposed representation, and, following a hearing, determine whether to exercise its discretion pursuant to Wheat v. United States, 486 U.S. 153, 164 (1988), to disqualify Mr. Mure from the proposed representation.

      The government submits that prior to the hearing both Figliolia and Sutherland should each have the opportunity to discuss the conflict with separate and unconflicted counsel.

BACKGROUND

      On December 5, 2023, Alexander Figliolia, Jr. and Kenneth Sutherland were indicted in the Eastern District of New York for conspiracy to defraud the United States, in

violation of Title 18, United States Code, Section 371, and tax evasion, in violation of Title 26, United States Code, Section 7201.  ECF No. 1 (hereinafter, the "Indictment").  The charged conduct relates to the defendants' involvement in a conspiracy from January 2017 through June 2020 in which Figliolia and Sutherland engaged in a scheme to defraud the United States by evading the payment of approximately $3,933,046 in federal taxes.

On December 6, 2023, Figliolia and Sutherland were arraigned on the Indictment.  During discussions with the government that day, Joseph Mure, counsel for Sutherland, informed the government that up until the day of the arraignment he represented Figliolia.  Mr. Mure further explained that for the purposes of the instant case he would cease representation of Figliolia and instead would represent Sutherland.

DISCUSSION

I.      Applicable Law

    A.      Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel.  See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003).  That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing.  See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993).  While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict."  Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all."  United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994).  An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client."  Jones, 381 F.3d at 119 (internal quotation marks and citations omitted).  A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future."  Id. (emphasis and citations omitted).

        1.      Mandatory Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney.  See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995).  Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice.  United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004).  "[A] per se violation of the Sixth Amendment [exists] in two limited circumstances: where defendant's counsel [is] unlicensed, and when the attorney has engaged in the defendant's crimes."  United States v. Fulton, 5 F.3d 605, 611 (2d Cir. 1993).

### 2. Discretionary Disqualification

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02-CR-1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

### 3. Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

3

B.      Relevant Conflicts

1.      Representation of Co-Conspirator

An attorney's representation of a co-conspirator, who in this case is also a co-defendant, presents an inherent conflict of interest. A serious conflict may also arise if the defendant wished to cooperate with the government's investigation and testify as to facts inculpating the other client. See Locascio, 6 F.3d at 931; Iorizzo, 786 F.2d at 57; Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client . . . ."). This is because a lawyer owes an absolute duty of loyalty and confidentiality to both his current and former clients. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration ("EC") 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to him by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274; EC 4-6 ("The obligation to protect confidences and secrets of a client continues after the termination of employment."). Therefore "unless the . . . client waives these obligations, the attorney's . . . representation creates the potential for a serious conflict of interest." Yannotti, 358 F. Supp. 2d at 295. Furthermore, in evaluating an actual or potential conflict of interest, actions of any member of a law firm are imputed to every member of the firm. E.g., Jiang, 140 F.3d at 127.

In representing a current client, a lawyer may not use privileged information obtained from another client. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Moreover, in representing a current client, a lawyer may not attack other clients through cross-examination or argument to the jury. See United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross examine [the cooperating witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for an attorney to cross-examine his prior client because the attorney is in a position to use information gleaned from the prior representation "either purposely or inadvertently").

The duty of loyalty to his former client thus effectively precludes a lawyer from vigorously cross-examining the former client or commenting on his credibility, which may be essential to the effective representation of the present client. See United States v. Kelly, 870 F.2d 854, 856-57 (2d Cir. 1989) (finding disqualification necessary because the defendant's interests would best be served by "vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests"—a task that defense counsel could not perform without "violat[ing] the rights of the informant" to expect continued loyalty and confidentiality from his former attorney); Malpiedi, 62 F.3d at 469 (finding that the lawyer was prohibited from seeking to "conduct a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney").

4

Notwithstanding the limitations outlined above, a defendant can generally waive potential conflicts arising from his attorney's prior representation of a co-conspirator. See Perez, 325 F.3d at 124 (citing United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). The Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross examine a former client in order to effectively represent a current client." United States v. Oberoi, 331 F.3d 44, 50 (2d Cir. 2003). Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 124 (quoting Fulton, 5 F.3d at 613).

II.  Analysis

On December 6, 2023, after the Indictment against the defendants was unsealed, Mr. Mure ceased his representation of Figliolia and initiated his representation of Sutherland. Based on this information, there is reason to believe that Mr. Mure's representation of Sutherland following his prior representation of Figliolia may raise a "substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person." Restatement (Third) of the Law Governing Lawyers § 121 (2000). This is because Mr. Mure would owe an absolute duty of loyalty and confidentiality to both clients. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); New York Rule of Professional Conduct 1.7 (stating, in part, that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing different interests").

Mr. Mure would be barred from helping to craft a closing argument or a sentencing presentation that emphasizes the disparity in the evidence against either defendant or their relative culpability. Mr. Mure would be precluded from eliciting testimony from witnesses that might benefit Sutherland by incriminating or casting suspicion on Figliolia. Mr. Mure would similarly be precluded from investigating leads, introducing evidence, or making arguments on Sutherland's behalf that would shift blame, or even suspicion, to Figliolia. Mr. Mure may also face difficulty in counseling Sutherland as to the fundamental trial question of whether Sutherland should testify in his own defense, since Sutherland's testimony could tend to implicate Figliolia, or whether Sutherland should enter into a cooperation agreement with the government and testify against Figliolia. Further, Mr. Mure's previous representation of Figliolia would impact Mr. Mure's ability to effectively cross-examine Figliolia at any eventual trial. In representing either client, Mr. Mure could not attack the other client through cross-examination or argument to the jury, for example by arguing that his former client is to blame for the criminal conduct. Holloway v. Arkansas, 435 U.S. 475, 490 (1978) (observing that "in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the

5

advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process" (emphasis in original)); United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); Rahman, 861 F. Supp. at 277; United States v. Spataro, No. 04 CR 911 (SJ), 2005 WL 3775954, at *4 (E.D.N.Y. Dec. 23, 2005) (noting concerns as to the Attorney's "difficult task" of "trying to cross-examine those witnesses with a[n] eye on protecting both clients at the same time, even though the responses he may seek to—or actually would—elicit may not be mutually beneficial" to both clients); cf. GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C., 618 F.3d 204, 209-10 (2d Cir. 2010) (in the civil context, simultaneous representation of clients with directly adverse interests is "prima facie improper," a standard which imposes "a burden so heavy that it will rarely be met"). Accordingly, the government respectfully submits that a Curcio inquiry is warranted to ensure that both Figliolia and Sutherland understand the potential impact upon their cases as a result of the potential conflict.

Mr. Mure may have obtained confidential client information from Figliolia that could conceivably be relevant to Mr. Mure's representation of Sutherland. The duty of loyalty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to him by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274. Therefore, in representing a current client, a lawyer may not use privileged information obtained from another client. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982).

Although these conflicts likely are waivable, the circumstances may warrant the exercise of the Court's discretion to decline to permit the proposed change in representation. See United States v. Cain, 671 F.3d 271, 294 (2d Cir. 2012) (recognizing the court's "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses" (quoting Wheat, 486 U.S. at 163)); United States v. Gonzalez-Lopez, 548 U.S. 140, 148 n.3 (2006) (acknowledging that the district court retains the prerogative to disqualify a defendant's first choice of counsel where there is a "serious risk of conflict of interest," without violating a defendant's Sixth Amendment rights, in service of the over-arching interest of ensuring that defendants receive a fair trial).

III.    Proposed Questions

In light of the potential conflicts at issue here, as described above, the Court should conduct a rigorous and searching inquiry of Sutherland and Figliolia (independently) (1) to ensure that, to the extent the defendants decide to waive the potential conflicts, they do so knowingly and intelligently, and (2) to determine whether the Court should exercise its discretion to bar the representation notwithstanding any waivers.

With respect to the latter question—whether to prevent the proposed representation notwithstanding any waivers—the Court's discretion is broad. As the Second Circuit has observed, "two important interests may impose limits on a defendant's right to waive attorney conflicts":

6

> (1) "the essential aim of the [Sixth] Amendment," which is "to guarantee an effective advocate for each criminal defendant," and (2) the "independent interest" of federal courts "in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." [Wheat,] 486 U.S. at 159-60 . . . . These interests, as well as the potential for gamesmanship on the part of the defendant who waives a conflict only to later claim ineffective assistance, weigh heavily in favor of affording the district court "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Id. at 163.
>
> …
>
> Given the difficulties of the decision, the uncertainties involved where the conflict has yet to fully materialize, and the need for the district court to rely on its "instinct and judgment based on experience in making the [disqualification] decision," the [Supreme] Court [has] concluded that although judges "must recognize a presumption in favor of petitioner's counsel of choice," the evaluation of whether "the facts and circumstances" of a particular case evince a conflict so serious as to be unwaivable is a discretionary one that is best left "primarily to the informed judgment of the trial court." Id. at 163-64.

Cain, 671 F.3d at 294-95. See also United States v. Rivera, No. 08 CR 1327 (HB), 2009 WL 1059641, at *1-2 (S.D.N.Y. Apr. 13, 2009) (disqualifying Rivera's counsel from representing him in light of potential ethical conflicts, including continuing duties of loyalty and confidentiality to Rivera's co-defendants, notwithstanding Rivera's willingness to waive the potential conflicts as he understood them ); aff'd, United States v. Rivera, 571 F. App'x 55, 60 (2d Cir. 2014) (summary order holding that the district court "properly exercised its judgment in concluding that the potential conflicts . . . were sufficiently likely to materialize").

      In the event the Court determines that the defendant can waive the potential conflict of interest, the government proposes that the Court advise the defendant as follows:

> *To Sutherland*:
>
> I am advised that your attorney has previously represented your co-defendant, who the government has identified as a co-conspirator and may be a witness at the upcoming trial. Your attorney has certain ethical obligations to this prior client. For example, it might be a conflict of interest for your attorney to investigate leads,

7

introduce evidence or make arguments on your behalf that might tend to incriminate or cast suspicion on this prior client.

Your attorney also may have privileged information from his prior client that could assist in your defense but that he could not disclose because of his ethical duties. It also is possible that another attorney could take a certain position with respect to your involvement (or non-involvement) in the crime charged against you or your relationship with your co-conspirators, whereas your attorney may be ethically barred from pursuing such a defense strategy due to contrary information he may have obtained from his prior client.

As your attorney, Mr. Mure has certain ethical obligations to you, including absolute duties of loyalty and confidentiality. However, he also has these obligations to Mr. Filgiolia, and those duties to Mr. Figliolia continue even after Mr. Mure withdraws as Mr. Figliolia's counsel. For example, Mr. Mure may not investigate leads, introduce evidence, or make arguments on your behalf that might tend to incriminate Mr. Figliolia or be contrary to his interests. Do you understand this?

[*if applicable*] I understand that at the present time, you and Mr. Figliolia believe that your defense strategies are aligned. Nevertheless, because you and Mr. Figliolia are co-defendants in this case, there is a possibility that your interests and Mr. Figliolia's interests will diverge, before, during, or even after trial. Such a divergence of interests could develop in any number of ways. For example, Mr. Figliolia could pursue a trial strategy that seeks to place the blame on you, or Mr. Figliolia could seek to cooperate against you. And likewise, you could decide to point the finger at Mr. Figliolia at trial. Do you understand this?

Mr. Mure will be constrained by his ethical obligations from making arguments or taking positions against Mr. Figliolia, shifting blame to him, or cross-examining Mr. Figliolia should he take the stand in his defense at trial. He will also be constrained from sharing information with you or developing a trial strategy that would tend to impugn Mr. Figliolia, even if that would be in your best interest. However, your other attorneys would be free to pursue these positions. Sitting here today, no one can predict how the trial in this case will go and what issues may arise. Thus, if you and Mr. Figliolia waive the conflicts described herein, Mr. Mure will have previously represented, and have continuing ethical obligations to, a co-defendant whose interests could substantially diverge from yours. Do you understand that?

8

If you are convicted, even at sentencing your attorney Mr. Mure would be precluded from arguing that you should receive a more lenient sentence because Mr. Figliolia was more culpable in the criminal conduct. Do you understand?

There may be other issues, in addition to the ones that I've just described, that can arise in which your attorney's ability to do certain things might be affected by the fact he has represented other clients in matters related to this case. No one can foresee every possible conflict of interest.

Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?

*To Figliolia*:

As your previous attorney, Mr. Mure has certain ethical obligations to you, including absolute duties of loyalty and confidentiality. These duties to you continue even after Mr. Mure withdraws as your counsel. For example, Mr. Mure may not investigate leads, introduce evidence, or make arguments on Sutherland's behalf that might tend to incriminate you or be contrary to your interests. Do you understand this?

[*if applicable*] I understand that at the present time, you and Mr. Sutherland believe that your defense strategies are aligned. Nevertheless, because you and Mr. Sutherland are co-defendants in this case, there is a possibility that your interests and Mr. Sutherland's interests will diverge, before, during, or even after trial. Such a divergence of interests could develop in any number of ways. For example, Mr. Sutherland could pursue a trial strategy that seeks to place the blame on you, or Mr. Sutherland could seek to cooperate against you. And likewise, you could decide to point the finger at Mr. Sutherland at trial. Do you understand this?

Mr. Mure will be constrained by his ethical obligations from making arguments or taking positions against you or cross-examining you if you choose to take the stand in your own defense. However, Mr. Sutherland could engage other attorneys, or those that work with Mr. Mure, who would be free to pursue a defense that points the finger at you. Mr. Mure might face a conflict to the extent he participates in defense strategy sessions, assists in the preparation of cross-examination strategy for key government witnesses, helps to shape arguments to be advanced in jury addresses, or otherwise shapes the contours of Mr. Sutherland's defense. Indeed, as Mr. Sutherland's sole attorney, Mr. Mure will likely be leading all of these efforts. Sitting here

9

today, no one can predict how the trial in this case will go and what issues may arise. Thus, if you and Mr. Sutherland waive the conflicts described herein, Mr. Mure will be representing a co-defendant whose interests could substantially diverge from yours. Do you understand that?

There may be other issues, in addition to the ones that I've just described, that can arise in which your attorney's ability to do certain things might be affected by the fact he has represented other clients in matters related to this case. No one can foresee every possible conflict of interest.

Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?

<u>Voluntary and Knowing Waiver</u>

Are you satisfied with the services of your attorneys thus far in the case?

Do you understand that, in every criminal case, including this one, the defendant is entitled to the assistance of counsel whose loyalty to him or her is undivided, and who is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his or her client's interests?

Have you received any inducements, promises, or threats about your choice of counsel in this case?

You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case, including any plea negotiations. If you proceed with your attorney, you will be giving up that right. Do you understand that?

Have you discussed these issues with your attorney?

You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that might arise if you proceed with your attorney. Do you understand that?

You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another lawyer before you advise the Court what you wish to do.

10

Is there anything I have said that you wish to have explained further?

Are you knowingly and voluntarily waiving your right to conflict-free representation?

Do you agree to waive any post-conviction argument, on appeal or otherwise, that your attorney's prior representation of another party, your co-conspirator, caused you to be denied effective assistance of counsel?

## CONCLUSION

For the foregoing reasons, the Court should notify Figliolia and Sutherland of the potential conflicts raised above and conduct an appropriate inquiry pursuant to Curcio. The Court should further advise each defendant regarding his right to conflict-free representation and determine if he can waive those rights.

                Respectfully submitted,

                BREON PEACE
                United States Attorney

By:        /s/
                Dana Rehnquist
                Philip Pilmar
                Assistant U.S. Attorneys
                (718) 254-7000

cc:    Clerk of the Court (OEM) (by ECF)
       Counsel of Record (by ECF)